Judge Ewing

delivered the Opinion of the Court,
William D. Payne, administrator de bonis non of David L. Ward, deceased, filed his bill against Robert H. Grayson and Sophonisba Grayson, his wife, and James B. Pollett, trustee for the use of said Sophonisba, setting up two mortgages executed by Robert H. Grayson to David L. Ward, the first bearing date the 20th day of August, 1816, the other the 13th of September, 1817; which stipulated to secure said Ward in the payment, by Grayson, of various sums of money therein set forth, and also, in the fulfilment and performance, on the part of R. H. Grayson, “of all and singular the obligations, covenants and agreements, which the said Robert has or may enter into with the said David,” upon a certain contingency therein stated, and also, setting up a settlement made between the said Ward and Grayson, on the 23d of *281 November, 1820, in which a balance of seventeen hundred and ninety six dollars and eighty six cents was found due to said Ward, and at the foot of the settlement, a due bill executed by Grayson for the amount, with a reservation of his account for rent of tanyard, and also his “claim per account last rendered, for leather &c." thereafter to be settled. Also, a note of four hundred and seventy dollars, which is charged to have been executed by Grayson, with Ward as his security, to John B. Hundley, and paid by Ward. And alleged that R. H. Grayson had conveyed the property in the mortgages mentioned, and other property to Peter W. Grayson, in trust for the use of Sophonisba Grayson and her children, who transferred the same, under a decree of a court of chancery, to James B. Pollett, in like trust, which deed of trust is charged to be without consideration and void.
Death of R. H. G. and of Pollett, a co-deft. after answering; bill of revivor and supplement.
Answer of Mrs. S. G. (the widow of R. H. G.) and her cross bill; which makes the ex’or of F. W. S. Grayson a party.
Robert H. Grayson and James B. Pollett died, after having answered the bill; and, by bill of revivor and supplemental bills, the heirs of each and William P. Grayson, the administrator of the former, were brought before the Court, and a note of one thousand dollars, negotiated at bank for the benefit of Grayson, in 1818, was exhibited, as paid, off by Ward, the indorser, and charged to be outstanding and unsettled.
Sophonisba Grayson filed answers to the several bills and amendments, controverting the matters set up, and making her answers cross bills against the complainant; praying a decree over for a balance, which she charged to be due her on settlement; also bringing James D. Breckenridge before the Court, as the executor of F. W. S. Grayson, deceased, and setting up two several demands against his testator’s estate—one for fourteen hundred and fifty two dollars, evidenced by the writing of F. W. S. Grayson, bearing date the 24th day of November, 1820, by which he acknowledged the sale of Robert H. Grayson’s interest in some lands, the payments to be made to himself “in three equal annual instalments,” and promised, when received by him, “to vest the same in bank stock, in trust, first to secure said Ward in what Robert may owe him, and next to the benefit of the wife and children of said Robert;” the other for five hundred and *282 seventy dollars, evidenced by writing signed by F. W. S. Grayson, bearing date November 13th, 1821, which acknowledges the “receipt from Mrs. S. Grayson, by Robert H. Grayson, of five hundred and seventy dollars for which he is to account on demand.”
Answer & crossbill of the adm’r of R. H. G.
Decree of the Louisville Chancellor; appeal &c
The administrator of R. H. Grayson, also, made his answer a cross bill, and prayed a decree over for the balance, that might be found due on the settlement of the rent of tanyard and leather account, which was excepted, as unsettled, in the due bill of his intestate at the foot of the settlement of November 23d, 1820.
The Chancellor, upon the hearing, dismissed the complainants’ bill absolutely, as to all the matters set up by him, except as to the covenant of R. H. Grayson to convey to Ward the one moiety of three thousand acres of land purchased from one Logwood, and as to that, dismissed it without prejudice as to the rights of Ward’s heirs or assignees. And decreed over against Breckenridge, as the executor of F. W. S. Grayson, In favor of Sophonisba Grayson, twenty one hundred and ninety dollars, it being the aggregate of the principal of fourteen hundred and fifty two dollars, and five hundred and seventy dollars, in her cross bills set up, and interest on the former sum from the exhibition of her cross bill, in that behalf, of the 6th of June, 1837, and on the latter from the exhibition of her cross bill therefor, of the 23d of March, 1838. And after extinguishing the amount of R. H. Grayson’s due bill at the foot of the settlement of 23d of November, 1820, (after making some corrections of small errors in the calculation,) also, after extinguishing the note to John B. Hundley, and discarding the note of one thousand dollars to the bank, as embraced in the settlement of 1820, the Chancellor decreed a balance out of the rent of the tanyard and leather account, over in favor of the administrator of R. H. Grayson, of eleven hundred and seventy five dollars and fourteen cents, with costs, as well in favor of the administrator aforesaid, as in favor of Mrs. S. Grayson. And vested the sum decreed in favor of Mrs. Grayson, in her, as trustee for herself and children. And further, he perpetually injoined Payne and Breckenridge, as administrator and executor, *283 from disturbing the tenants of Mrs. Grayson, by ejectments or other proceedings under the mortgages set up in Payne’s bill, which mortgages seem to have been assigned by Ward in his life time, or claimed to be assigned, in a general assignment of his property to F. W. S. Grayson in his life time.
Approval of the decisions of the Chancellor upon most of the points—which, being matters of fact, are not recapitulated in this opinion.
Conclusions of this Court upon some of the matters of fact.
Moneys are to be refunded in case a party fails to obtain a decree in a certain suit for land: whenever a decree is rendered establishing the right to the land, the contingent obligation to refund ceases, tho’ the cause may be retained for further proceedings upon collateral matters reserved.
From this decree Payne and Breckenridge have appealed to this Court, and the administrator of R. H. Grayson and Sophonisba Grayson have, under the statute, filed cross errors.
The able and expanded view of the Chancellor, will preclude the necessity of a minute discussion on our part, of the various matters involved in this complicated controversy. Indeed, we deem it wholly unnecessary to notice in detail, all the points involved, as we can add nothing to his luminous view, or the force of the argument by which the most of his positions have been sustained.
We feel perfectly satisfied that the money items embraced in the first mortgage, as well as a portion of those embraced in the last, and secured by said mortgages, were sums advanced by Ward to Grayson, in payment for George Grayson’s one fourth part of the seventy thousand acres of land on Sandy, embracing the Little Sandy salt works; and that those items, as well as the other item in the second mortgage, were settled and allowed as credits to Ward in the settlement of 1820; he, said Ward, being charged with $16,000, the price of the purchase, and credited with the said sums, together with others, not embraced in the mortgages, as payments.
According to the express terms of the first mortgage, (to which the latter, or the sums therein secured were tacked,) those sums were to be refunded, in six months after the final determination of a suit then depending in favor of George and Robert Grayson, the trustees and heirs of Alfred W. Grayson, for the one fourth of the Sandy tract of land, which had been purchased by Robert from George, and sold by the former to Ward, “in case said Robert should fail to recover in said suit,” George’s one fourth of said premises. The contingency on which those sums were to be paid to Ward, has not *284 happened; that is, the said Robert and George have not failed to recover in said suit, but, on the contrary, by a final decree rendered in 1817, Robert’s right to George’s one fourth of said premises was established, and the trustees ordered and decreed to convey to him, and perpetually injoined from selling or setting up any claim to the same, or disturbing him in the enjoyment thereof, and the equity of said George therein, also extinguished forever. Said decree remains unreversed or annulled; was final and conclusive upon the rights of the parties, and of course, the contingency upon which the sums secured in the mortgages were to be refunded, has never happened and can never happen.
The continuance of the cause for execution of the decree, or some other collateral matter, and its subsequent dismissal, can apply only to, the collateral matter, and can in no wise effect the conclusive character of the decree, which remains in full force.
The parties acted under the decree as final, and as superseding the contingency upon which the sums mentioned in the mortgages were to be refunded, and Ward took a deed, in 1819, for the fourth so recovered, and treated those claims no longer as debts or demands to be refunded, but as sums of money received by Grayson, as payments for the land, and as justly belonging to him, he, Ward, charging himself in the settlement of 1820, with the price, and crediting himself with those sums as payments, And so the matter rested until long after the death of Ward and his son-in-law, F. W. S. Grayson, who was his agent and assisted in making the settlement.
We are also entirely satisfied that the Chancellor has not erred, to the prejudice of the administrator of Ward, in the result of the allowance made in favor of Grayson’s administrator, for rent of tanyard and leather account. But we think the result is more favorable than the proof will justify. Though we think the allowance to Grayson’s administrator, for rent of tanyard at six hundred dollars a year, was too high, we are satisfied that the allowance for vats of leather, tools &c. was too low. Five hundred dollars per annum is about the medium value fixed by the witnesses for rent, which, at four years, the *285 time occupied by Ward at least, will make two thousand dollars chargable against his estate for rent. The vats of leather are proven to be worth at least two hundred dollars a piece. Take ten, as the minimum number proven to have been delivered to Ward, and their aggregate value will be two thousand dollars, which, we think, is the least sum that can be allowed against Ward’s estate for leather, add to it fifty dollars for tanyard tools, and two thousand and fifty dollars is produced against him, on account of the leather &c. embraced in the reservation against Ward’s estate, at the foot of the settlement of November 23d, 1820, The leather furnished Ward’s family for several years, was most probably embraced in the settlement of the 4th of March, 1819, which is referred to in the settlement of 1820, as Ward got possession of the tanyard in 1819, and of the leather, and had no necessity longer to be furnished with leather for his family by Grayson. The items for tan bark, raw hides and loose leather are excluded as too indefinitely proved as to quantity or value. Besides, as some of the vats may not, perhaps, have been entirely full, the sum allowed for them may be sufficient to cover any deficiency produced by the exclusion of those articles.
A party in chancery sets up a claim, and shows himself entitled, to an allowance for certain personal property, the value of which he does not profess to know, and which it appears he had not the means of knowing, but which he estimates, in his pleadings, at a specified amount viz: “at least $1000:” it was erroneous to restrict him to this estimate: what the proof shows the property to have been worth sho’d be allowed-tho’ it is double the amount of his estimate.
Nor do we think that there is any thing in the answer of R. H. Grayson, that should limit and restrict the amount proven for vats of leather and tools to one thousand dollars. Though he estimates the value at least to that sum, he sets up a charge for the whole as unsettled; states that he was absent when they were valued; did not know the valuers or the amount agreed on, if the valuation was ever made, and clearly indicates that he has no definite idea of the value.
Deduct from the aggregate amount fixed for the rent of tanyard and vats of leather and tools, the amount at the foot of the settlement of 1820 against Grayson, as corrected by the Chancellor, also the amount of the note of four hundred and seventy dollars in favor of Hundley, lifted by Ward as the surety of Grayson, and a balance of eighteen hundred and twenty five dollars and fourteen cents will be left in favor of Grayson; for which a decree should have been entered in favor of his administrator.
Two different setlemenis occured after one of the parties had paid off a note as surety for the other; it is presumed therefore, that one of them included the note & it is disallowed in the pending controversy.
A party purchased 3000 acres of land; paid for 1200 acres in other land; gave his notes for the balance of the price and took his vendor's obligation to convey the 1200 on demand; and the residue upon the payment of note-which still remain due. The purchaser sold half the land soon afterwards, and bound himself to make a title in reasonable time after he should obtain one himself. His vendee entered upon the land, used it extensively, and sold 200 acres to one who took and still holds the possession; the residue he retained for many years, and till his death: held that, the purchaser had an equitable title to the land while he lived, which, at his death; passed to his heirs; and it is not competent for the adm. to annul the contract, and convert the bond into a money demand; and the adm'rs bill, so far as it had that object, was properly dismissed, especially, as the subpurchaser (of the 200 acres) was not before the court.
*286 There is no pretext for allowing, in favor of Ward’s administrator, the note of one thousand dollars lifted by Ward at bank, as the indorser of Grayson, as two settlements took place after it was lifted.
We concur in the conclusion to which the Chancellor has arrived with respect to the covenant on the part of Grayson, to convey to Ward the one half of three thousand acres, purchased by the former from Thomas Logwood.
It seems that Grayson, as early as 1815, purchased the three thousand acres of Logwood, paid him in a tract of land, on James River in Virginia, for 1200 acres of the quantity, and executed his notes to Logwood for twenty two hundred and fifty dollars, payable in three annual instalments, the residue of the price, and took his bond for the conveyance when requested, of the 1200 acres, and for the conveyance of the residue, on the payment of the residue of the consideration. That the consideration for the residue has not yet been made. And that, in 1816, he sold and gave his bond to convey the one half thereof to Ward, in reasonable time, after receiving a conveyance from Logwood. That Ward took possession, shipped off a sufficient quantity of timber for building two steam boats, besides other timber, and large quantities of tan bark, and sold two hundred acres of the land to one Puthoff, and put him in possession thereof, who continued thereon from the sale in 1819, and now is in possession of the same, and as late as 1825, not long before the death of Ward he gave a power of attorney to an individual, to lease or sell any part thereof, and continued to hold possession up to his death, and to exercise every act of ownership over the land, without demanding the title, or evidencing, in any form, an abandonment of the land or of his equity therein. We therefore think, with the Chancellor, that the equitable right to the land itself remained with his death, and at his death, passed to his heirs, except as to the two hundred acres sold by Ward, in his lifetime, the equity to which passed by the sale to Puthoff, his alienee. And that the Chancellor did right, under the circumstances of this case, in withholding from the administrator the right attempted to be exercised by *287 him, in despite of the intentions and wishes of his intestate, as evidenced by his acts, of disannulling the contract, and converting the bond of Grayson for a title into a money demand, by riding over the equitable rights of the heirs and an innocent alienee, without his privity or assent; and in dismissing the bill without prejudice; and the more especially as Puthoff was not brought before the Court.
A deed contains a covenant of seizin secured by mortgage. There is a defect in the legal title, which amount to a breach of the covenant of seizin. But the grantee had mortgaged the and had been sold under a decree upon foreclosure and passed to divers purchasers, who had never been disturbed in their possession, and, as the equity is perfect, there is no difficulty in securing the legal title: under these circumstances, a court of equity will not sustain the claim of the administrator, as complainant, to damages, for a breach of the covenant of seizin.
We cannot, therefore, say that the Chancellor erred in dismissing the complainant’s bill without prejudice as to this claim.
Besides, the consideration for twelve hundred acres of the land having been paid, no perceivable impediment lies, upon the proper application, to a specific enforcement of the contract as to that quantity of the land; and the mortgage upon the moiety of the three thousand acres held by Grayson’s heirs, and upon numberless other tracts, which has not been released by Ward, would seem to afford sufficient indemnity to Ward’s heirs for the loss of the three hundred acres—the quantity necessary to make up the full quantum of a moiety of the three thousand acres sold to Ward, if not to pay the whole residue of the consideration for the whole tract; which being paid, no obstacle seems to intervene to the completion of the title to the whole moiety sold.
But it seems that the deed of 1819, made by Grayson to Ward, for George Grayson’s one fourth of the Sandy tract of seventy thousand acres, contains a covenant of seizin. And it is contended by the counsel for the administrator of Ward, that the morgage of 1816 embraces this covenant, and secures its fulfilment, and that as a conveyance was not made by the trustees of Alfred W. Grayson, to R. H. Grayson, under the decree in up, in favor of the latter, that no title in fee was vested in Robert at the time when he executed said deed nor at the hearing; and that he had broken his covenant of seizin. The contract of sale required only a covenant of warranty against the title of George Grayson and those claiming under him, and it might well be questioned whether the *288 covenant of seizin was not introduced into the deed, as charged in the cross bill, without consideration, by mistake or fraud.
The possession of an obligation is prima facie evidence that it remains due, and if the obligation was payable when a certain debt due the obligor sho'd be paid, the later will be presumed to have been paid, and the former to have become payable, when there has been ample time to collect it, and nothing to the contrary appears.
*288 And it may also be questioned whether the security for the performance of the covenants or agreements mentioned in the first mortgage deed, is not made, by its terms to depend upon the same contingency that the security for the money items is made to depend, namely the failure of Robert H. Grayson, to obtain a decree in the suit, against Alfred’s trustees and heirs, in the Greenup suit. But if these considerations be waived, it appears from the record, that after Ward took the deed of 1819 from Grayson, he mortgaged the land embraced therein to the Bank of the United States; that the mortgage was foreclosed, and the land sold under a decree, and the bank became the purchaser of the whole, and afterwards sold out to others, who entered into possession and have continued, and now are in the possession and enjoyment of the same, under the title of Ward, derived as aforesaid, from Grayson.
The possession and title, legal and equitable, of Ward passed by his contract to the alienees of the Bank, and cannot be surrendered or restored by the administrator to the heirs of Grayson. We can scarcely believe that, under these circumstances, a chancellor should indulge the administrator of Ward, as complainant in a court of equity, to recover damages for a breach of covenant of seizin, and the more especially as the equity of the alienees of the Bank is complete, their possession undisturbed, and all impediments to the consummation of the legal title is concluded by the decree in Greenup, and nothing remains out of them but the bare naked legal title; which can at any time be procured by a proper application to a court of equity.
We also concur with the Chancellor in his decree in favor of Mrs. Grayson, against the estate of F. W. S. Grayson, for the two demands, evidenced by the writings of the latter, one for $1452, bearing date the 24th of November, 1820, the other for $570, bearing date the 13th of November, 1821. There is no evidence tending to show that either of those debts has ever been paid, and *289 the fact of possession of the evidences thereof, raises the presumption that they have not been. And in the absence of all proof tending to show that the first debt has not been collected, or could not have been collected, the presumption must be indulged that it was collected.
A party executed an obligation acknowledging that he had sold certain land, to the proceeds of which the obligee was entitled, and binding himself to invest it in bank stock, for the obligee’s use, when, collected (p 281) interest should be allowed, in equity, upon this demand, from the times when the instalments for, the land became due.
Nor can we, as urged by the counsel, in the absence of all proof, indulge in the presumption that the latter debt was a part and the balance of the first debt. Had this been so, the probability is, according to the usual course of business, that the first writing would have been lifted. Besides, the terms of the last writing repels such a presumption. It acknowledges the receipt of the money from R. H. Grayson, and makes no referrence to it as money collected by F. W. S. Grayson from the sale of lands.
But we think the Chancellor has erred to the prejudice of Mrs. Grayson and her children, in not commencing his calculation of interest, upon both those amounts, from an earlier period than he did.
By the acknowledgment of F. W. S. Grayson, in the writing of the 24th of November, 1820, the consideration for the land sold, of which Robert’s part was $1452, was to be paid in three equal annual instalments. Those instalments, at farthest, would fall due—the first on the 24th of November, 1821; the second on the 24th of November, 1822, and the third on the 24th of November, 1823. If those instalments were collected when they severally fell due, then, from those several periods, F. W. S. Grayson had the use of the money, failed to pay it over, or vest it according to his promise and undertaking, and should account for the interest. If he did not collect it when it fell due, but at a subsequent period, then would the vendee of the land and obligor for the consideration be responsible to him for the interest, for the time which run from the falling due of the instalments until the payment, and Grayson would have the use from thence forth of the principal and interest, and should be at least rendered responsible for running interest upon the principle only, from the times the instalments fell due.
A debt was payable on demand a cross bill, in which it was set up, charges that it had been frequently demanded, and especially on such a day; this not being denied by the answer, interest should be allowed from that date.
It is most regular to decree accruing interest, under the act of ’37 (Ses. Acts, 207,) where a party is entitled to interest in chancery. But the cl’k may indorse the execution that the debt bears interest, & the omission of it in the decree, will not reverse it.
Reversal, on the cross errors only, and mandate.
And, as to the other debt, of $570, it is made payable on demand. But it is alleged distinctly in the cross bill of Mrs. Grayson, filed the 23d day of March, 1838, that said debt was often demanded of F. W. S. Grayson in lifetime, and of his executor J. D. Breckenridge since and “particularly in August, 1830, when suit was brought thereon, and afterwards dismissed without her knowledge Breckenridge answered this cross bill, and did not deny or attempt to gainsay its allegations. The demand from him and suit against him, in August, 1830, must be presumed to have been known to him. Its allegations, therefore, should have been taken for confessed, and interest allowed at least from August, 1830.
It would also have been more regular for the Chancellor, under the statute of the 16th of February, 1837, (Acts, 1836-7,) to have decreed accruing interest from the date of the decrees, as well in favor of the administrator of R. H. Grayson, on the decree in his favor, as in favor of Mrs. Grayson, on the decree in her favor, instead of leaving to the Clerk, as required by the statute, to make an indorsement on the execution, to that effect, though this omission would not furnish ground for reversal.
It is, therefore, the opinion of the Court that, there is no ground for reversal on the appeal of the plaintiffs. But that upon the cross errors assigned by Mrs. Grayson, and the administrator of R. H. Grayson, the decree be reversed and cause remanded, that interest may be estimated and allowed upon one third of the demand for $1452, from the 24th of November, 1821, up to the date of the decree, on another third of said demand from the 24th of November, 1822, up to the same time, and upon the other third from the 24th of November, 1823, up to the same time; and that interest may be calculated upon the other demand of $570, from the last day of August, 1830, up to the same time; and that both those demands, with the interest thus estimated, be added together, and the aggregate amount, with accruing interest thereon till paid, be decreed to and vested in Mrs. Sophonisba Grayson, in trust for her and her children, as is directed by the Chancellor in his decree herein. And that a decree may be rendered in favor of the administrator of R. H. Grayson, *291 for eighteen hundred and twenty five dollars and fourteen cents, against the estate of Ward, instead of the amount of eleven hundred and seventy five dollars and fourteen cents decreed by the Chancellor.
And the defendants as such are entitled to their costs &c. in this Court, and also to their costs on their cross errors.